In the Fall of 1931, the appellant, New Holland National Bank, made an agreement with the Farmers National Bank and Trust Company, also of New Holland, for the liquidation of the appellant. The agreement was finally concluded about 3 o'clock A. M. November 27th, at a meeting attended by the officers of both banks, most of the directors, a bank examiner representing the Banking Department of the Commonwealth and by counsel.[1] The plan agreed to and sought to be carried out was to have the defendant turn over to the plaintiff all its assets of every kind together with a list of all its creditors, accounts, etc.; in return, the plaintiff agreed to convert the assets into money and pay the debts and account for the balance, if any. It was agreed that an inventory of *Page 430 
all defendant's property and assets should be attached to the agreement, the inventory being "authenticated by the signature of the respective corporations and their respective corporate seals." The contract was executed by the parties' officers in the corporate names and was also signed by the directors of each bank; the inventory referred to was attached and made part of the contract but the parties neglected to "authenticate" it "by the signature of the respective corporations and their respective corporate seals," except as the general execution of the contract by the corporations and their directors should be regarded as such authentication. The assets were delivered. The plaintiff converted them and paid the defendant's debts in an amount exceeding the amount received for the assets by $101,907.07. If those were not the facts, defendant should have denied the plain import of the statement of claim and specifically averred what defendant considered to be the facts which it would prove. In the absence of such averment defendant's argument is without force.
We have some difficulty in understanding the precise complaint now made by the appellant; at the argument it was contended there was error in directing a verdict for the plaintiff which, of course, might be true if there were any dispute of fact for the jury; it was also said there was error in refusing defendant's motion to continue the case in order that it might have the benefit of the testimony of an absent witness, Mr. Storb. No other objection was made. It is elementary that judgment will not be reversed unless the error complained of is harmful. At the trial, appellant stated that the only disputed fact concerned "what occurred at the time the schedules [referring to the inventory] which have been . . . admitted in evidence, were prepared. . . ."
Dealing first with the complaint that the court refused the motion to continue, the record shows that when the case was called for trial, May 2, 1938, counsel for appellant moved to continue the case "because of the absence *Page 431 
of H. K. Storb, who suffered a broken left shoulder and two broken bones of the left wrist, on the 23d of March, 1938, the bones of the wrist having been reset on April 11, 1938 . . . H. K. Storb being president of the defendant bank, and a material witness, and the party who has signed affidavit to all of the pleadings filed by the defendant. . . ." The plaintiff objected and, among other grounds for the objection, stated that "All the evidence is documentary, and in addition to that, Mr. Storb is out and about. He can come into court if he wants to." As it did not appear that the witness could not be present, and as the case had been "on the trial list on three previous occasions and continued," we think there was no abuse of discretion.[2]
In considering the complaint that the court directed a verdict for the plaintiff and refused defendant's point for binding instructions, we shall examine the pleadings to see whether the appellant was injured by the action complained of. The statement of claim contained the contract made between the two banks on the 27th of November, 1931. In the 7th paragraph of the statement of claim, plaintiff set forth a list of assets received from defendant and the values placed on them, the total being *Page 432 
$1,064,198.52. In the 8th paragraph plaintiff set forth the amounts expended by it, aggregating $1,166,105.59, in payment of defendant's debts. These averments were not specifically denied in the affidavit of defense and, for the purposes of the present review, must therefore be accepted as the facts. The difference between the two amounts is the sum in suit.
It is not disputed that the inventory (Exhibit D) was prepared and attached to their contract; it was freely used at the trial throughout the testimony of Mr. Zwally[3] and Mr. Medill,[4] both present when the contract was executed. It is immaterial, for the purposes of this review, that the parties, when they signed the contract, neglected also to add their signatures to the exhibit, because not only is there nothing to show that this is not the paper then prepared and acted on, but by omitting, in the affidavit of defense, to deny that the exhibit was what it purported to be, defendant will not at this stage of the suit be heard to deny it. While the admissions resulting from failure specifically to deny averments in the statement of claim were not read in evidence, they may be referred to here for the purpose of determining whether, on the facts put in issue, appellant has shown that there was reversible error at the trial. So considered, we think the judgment must be affirmed.
[1] Their names appear as witnesses.
[2] The case was tried and after the evidence was in, defendant, in renewing the motion to continue said: ". . . The only testimony here involving any dispute as to matter of fact is as to what occurred at the time the schedules which have been offered in evidence as 'C. P. No. 1' and 'C. P. No. 2,' and admitted in evidence, were prepared, and it appears from the testimony of the plaintiff's witnesses that H. K. Storb, one of the representatives of the defendant bank, was present at that time. Mr. Eaby: [representing plaintiff] If Your Honor please, H. K. Storb cannot add a single thing that would benefit the defendant. What Mr. Zwally, testified to and what Mr. Medill testified to was exactly what was done. They were all there and made this inventory but did not put their seal on it. Mr. Hambright: My position is that that may be true for the time being; we are going ahead without Mr. Storb being present. But if anything in the testimony was not correct, I have no opportunity to deny that. The Court: The motion is overruled."
[3] Zwally testified: "Q. Witness shown C. P. No. 1 and C. P. No. 2, which are the two sets of papers used by you and Mr. Hambright, and myself, and asked whether or not those are the inventory you referred to? A. Yes, sir. Q. And this is the only inventory that was prepared? A. That is right, yes, sir. Q. And this is the one that was prepared in that midnight session? A. Yes, sir. Mr. Eaby: I now offer in evidence 'C. P. No. 1' and 'C. P. No. 2.' " They were received in evidence over defendant's' objection and subject to exception.
[4] Medill, a bank examiner, testified: "Q. Were you present when this alleged inventory, or whatever it may be called, was made? A. Yes. Q. And were the representatives of both institutions present? A. They were." *Page 433